LOVE MACIONE [CA BAR No: 200538]
SCHEIN & CAI LLP
111 NORTH MARKET STREET, SUITE 1020
SAN JOSE, CA 95113
TEL.: (408) 436-0789
FAX: (408) 436-0758

Attorney for Plaintiff: Wei-Chuan U.S.A., Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Wei-Chuan U.S.A., Inc., and Yi-Jie Lin, | Agency Case No.: WAC-13-142-50525 |
| Plaintiffs, | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| v. | |
| Eric Holder, United States Attorney General; Rand Beers, Acting Secretary of Homeland Security; Alejandro Mayorkas, Director, United States Citizenship and Immigration Services; Kathy Baran, Director, California Service Center United States Citizenship and Immigration Services, | |
| Defendants. | |

CV 13 4899 DMR

This action arises out of the constitutional, statutory, and regulatory violations committed by the Defendants. Plaintiff Wei-Chuan U.S.A., Inc., (hereinafter "Wei-Chuan"), by and through the undersigned counsel, hereby respectfully asks this Honorable Court to issue a judicial declaration invalidating the decision of Defendants Eric Holder ("Defendant Holder"), Rand Beers ("Defendant Beers"),

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1

Alejandro Mayorkas ("Defendant Mayorkas") and Kathy Baran ("Defendant Baran") (hereinafter collectively "Defendant") to deny Plaintiff Wei-Chuan's I-129 Petition to classify Ms. Yi-Jie Lin as an H-1B temporary specialty occupation nonimmigrant worker.

Defendant's decision was "arbitrary and capricious" and was in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §706(2)(A). This provision of the APA provides that a court reviewing an agency action shall "hold unlawful and set aside agency action, findings, and conclusions found to be... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ...." In support of this complaint, Plaintiff allege as follows:

1. Section 101(a)(15)(H)(i)(b) of the Immigration & Nationality Act ("INA"), 8 U.S.C. §1101(a)(15)(H)(i)(b) provides, in part, for the classification of qualified nonimmigrant aliens who are coming temporarily to the United States to perform services in a specialty occupation. The United States Supreme Court has held that an agency must engage in "reasoned decision-making." *Judulang v. Holder*, 132 S.Ct. 476(2011). A court can review whether the decision was based on "a consideration of the relevant factors" and whether "there has been a clear error of judgment." Id. at 484.  That review requires looking at the quality of the agency's reasoning (or lack thereof).

2. Plaintiff Wei-Chuan, needing a Management Information Systems Specialist (a Database Administrator), sought to obtain an H-1B visa for Plaintiff Lin, who had the necessary education and skills to perform the job. Plaintiff Lin, who was in valid nonimmigrant F-

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

1(Student) status, holds the foreign equivalent of a bachelor's degree in Management Information Systems and wished to work for Wei-Chuan as a temporary specialty worker.

3. The United States Citizenship and Immigration Services ("USCIS") denial of the petition and change of status/extension of stay has harmed Plaintiff Wei-Chuan because Plaintiff Lin was hired to fill a critical position within the company. Plaintiff Lin has been harmed by the denial of her change of status from F-1 international student to H-1B Specialty Occupation Worker as she has lost her lawful nonimmigrant status for unlawful reasons.

**PARTIES**

4. Plaintiff Wei-Chuan is a U.S. corporation, founded in Los Angeles in 1972. It is a manufacturer of frozen foods that are sold both to the consumer and to restaurants. In addition to its Los Angeles plant, it has warehouses and wholesale branches in New Jersey, Los Angeles San Francisco, Chicago, Houston, and Atlanta. It currently employs over 300 employees and has just expanded to a new plant in Rutherford County, Tennessee. This expansion in manufacturing operations will result in the hiring of an additional 317 employees. Its revenues exceed $100 million annually.

5. Plaintiff Lin is a citizen of Taiwan. In June 2007 she completed the course of study in the Department of Information Management and was conferred the degree of Bachelor of Business Administration by the Nanya Institute of Technology in Jhongli, Taiwan. This degree was evaluated by a professional educational

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 3

credential evaluator as the equivalent of a bachelor's degree in Management Information Systems from a regionally accredited college or university in the United States. She additionally completed a one-year post-graduate certificate program in Business Administration at the University of California Extension, Santa Cruz in Santa Cruz, California.

6. Defendant Holder is the Attorney General of the United States, and he is responsible for the Department of Homeland Security ("DHS")'s implementation and enforcement of the INA.

7. Defendant Beers is the Acting Secretary of the Department of Homeland Security ("USDHS), and responsible for the administration of the USCIS, as well as the implementation and enforcement of the INA.

8. Defendant Mayorkas is the Director of USCIS, a component within the USDHS, and is responsible for the overall administration of USCIS and the implementation of the immigration laws that pertain to non-immigrant visa petitions, including adjudicating H-1B visa petitions filed by employers on behalf of intended employees ("beneficiaries") in specialty occupations.

9. Defendant Baran is the Director of the California Service Center, the division of USCIS responsible for the adjudication of the H-1B petition at issue in this action.

### JURISDICTION AND VENUE

10. This action arises under a federal statute, 8 U.S.C. §1184. Honorable Court has original jurisdiction over this action under 28 U.S.C §1331 because it arises under the constitution, laws, and

treaties of the United States. Agency actions are reviewable under federal question jurisdiction, pursuant to 28 U.S.C. 17049 § 1331 and reinforced by the enactment of the Administrative Procedure Act ("APA"), even if no statute specifically authorizes judicial review. *Reno v. Catholic Soc. Serv., Inc.*, 509 U.S. 43, 56-57, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). *See, also Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 687-88 (9th Cir.2003)

11. This Honorable Court has jurisdiction over this action under 28 U.S.C §2201, the Federal Declaratory Judgment Act.

12. This Honorable Court has jurisdiction under Administrative Procedures Act ("APA"), 5 U.S.C. §702, because this action arises from a legal wrong that resulted from an agency action.

13. The Honorable Court also has jurisdiction over this action under APA, 5 U.S.C. §§704 and 706, a final agency determination that was not in accordance with the law.

14. The Honorable Court clearly has jurisdiction over denial of petitions for H-1B nonimmigrant visas for individuals working in temporary specialty occupation positions. *Shanti, Inc. v. Reno*, 36 F. Supp.2d 1151, 1160-1161(D. Minn. 1999). The definition of "specialty occupation" upon which the USCIS denial depended (codified at Immigration and Nationality Act Section 214(h)) constitutes a legal standard the meaning of which the Court retains jurisdiction to clarify. *Ana International Inc. v. E. Way*, 393 F. 3d 886 (9th Cir. 2004).

15. Venue lies in the United States District Court for the

Northern District of California, Oakland Division, the judicial district in which the proffered job is located. 28 USC §1391(e).

**STATEMENT OF THE FACTS**

16. Plaintiff Wei-Chuan requires the temporary services of a Management Information Systems ("MIS") Specialist in order to install, program, and configure the company's management information systems to process transaction data including accounting, sales, procurement, inventory control, and logistics coordination. This Specialist would also need to analyze business transaction types and needs of information processing and to design databases for tasks of report generation, sales and inventory data storage, retrieval and intra-departmental transmittal. The MIS Specialist would also set up and upgrade telecommunication software applications for the company's management information system for intra-company and corporate communications with suppliers, domestic wholesalers and other vendors.

17. On April 1, 2013, Wei-Chuan filed an I-129 nonimmigrant visa petition with USCIS in order to classify Ms. Yi-Jie Lin, Beneficiary, as a specialty occupation worker so that she could perform the duties of the MIS Specialist for them. The petition requested not only a change of status for Ms. Lin from F-1 international student to H-1B specialty worker, but also sought to extend her lawful stay in the United States for a period of three years.

18. Section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act ("INA") describes a temporary specialty worker as an alien coming to the United States temporarily to work in a "specialty

occupation described in section 214(h)(1)." INA Section 214(h)(1) defines "specialty occupation" as "an occupation that requires-(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States."

19. Plaintiff Wei-Chuan stated in its petition and supporting documents that the Management Information Systems Specialist requires a Bachelor's degree in Management Information Systems or Computer Information Systems or the equivalent.

20. In order to obtain an approval of an H-1B petition, an approved Labor Conditions Application ("LCA") must be filed in conjunction with the I-129 petition, showing the occupation, place of employment, the dates of employment, and the salary. The salary must be at least the prevailing wage for that occupation. The occupation is chosen from a list of occupations found in the government's Standard Occupational Classification ("SOC") system. Every occupation title in the SOC has its own SOC code.

21. Not every job title has an SOC occupational title or code. One must locate the SOC occupation title whose job description most closely matches that of the position for which an H-1B specialty worker is being sought.

22. After doing a search for the most appropriate SOC occupation title by perusing both the SOC occupation descriptions and the Department of Labor's Occupational Outlook Handbook ("OOH"),

Petitioner Wei-Chuan chose the SOC occupation title: "Database Administrators, SOC Code 15-1141" which also covers the occupation "Information Scientist."

23. The job duties listed in the OOH job description for Database Administrators are as follows:

- Identify user needs to create and administer databases
- Ensure that the database operates efficiently and without error
- Make and test modifications to the database structure when needed
- Maintain the database and update permissions
- Merge old databases into new ones
- Backup and restore data to prevent data loss

24. The job duties listed in the SOC occupation description for Database Administrators are as follows:

- Test programs or databases, correct errors and make necessary modifications.
- Modify existing databases and database management systems or direct programmers and analysts to make changes.
- Plan, coordinate and implement security measures to safeguard information in computer files against accidental or unauthorized damage, modification or disclosure.
- Work as part of a project team to coordinate database development and determine project scope and limitations.
- Write and code logical and physical database descriptions and specify identifiers of database to management system or direct others in coding descriptions.
- Train users and answer questions.
- Specify users and user access levels for each segment of database.
- Approve, schedule, plan, and supervise the installation and testing of new products and improvements to computer systems such as the installation of new databases.
- Review project requests describing database user needs to estimate time and cost required to accomplish project.
- Develop standards and guidelines to guide the use and acquisition of software and to protect vulnerable information.

25. On May 23, 2013, USCIS responded with a Request for Evidence ("RFE"). The RFE stated that it did not believe the proffered position to be a specialty occupation and requested further documentation to show that it is in fact a specialty occupation. No details were given as to why USCIS did not believe the position to be a specialty occupation.

26. Specifically, USCIS requested: 1) a more specific job description, including a breakdown of how time would be spent on each job duty, 2) proof that an "industry-related professional association" has recognized that public relations specialists require a bachelor's degree in a particular specialty as a minimum requirement to enter the field 3) letters or affidavits from firms or individuals in the industry that attest that firms similar to the petitioner's routinely require that Public Relations Specialists acquire a bachelor's degree 4) Job listings for similar positions by similar companies 5) evidence of past employment practices of Petitioner in the form of job announcements  6) proof of the qualifications of any individual who previously held this position with Plaintiff, 7) documentation about the company including "company brochures, pamphlets, internet website, press releases, business plans, promotional materials, advertisements, patents, critical reviews, articles, photographs of prototypes, etc." in order to establish that a bachelor's degree is required in order to perform the duties of the position (although it is unclear how such evidence would demonstrate the need for a degree), and 8) an explanation as to how this position is more complex than "other

related 'non-specialty occupation' positions."

27. In response, Wei-Chuan, Inc. submitted: the U.S. Department of Labor's Occupational Outlook Handbook ("OOH") description of the required background for Database Administrators (as the OOH is the USCIS "go-to" source for an occupation's educational requirements), an extremely detailed job description, company information (which had also been included in the initial filing), information from university MIS programs discussing MIS careers, and ten job listings for similar positions.

28. Because it is difficult to ascertain the income and number of employees of the small businesses seeking accountants, as this information is not generally posted in the ad nor is it a public knowledge, a range of job listings was submitted.

29. On September 12, 2013, USCIS denied the petition and change of status/extension of stay.

30. The basis for the denial was is that the position is not a specialty occupation. Specifically it stated that:

> "The beneficiary will be responsible for *installing and programming the Company's management information systems for processing business transaction data including sales, accounting, supply purchasing, inventory control and logistics coordination….*"   (emphasis added)

31. USCIS then noted that the position includes many responsibilities that are not specifically classified in the OOH and opined:

> "Because it appears that the beneficiary will be *primarily maintaining the petitioner's existing computer systems*, and will not mainly engage in duties of a degreed database

administrator, the proffered position does not seem to be analogous to the position of a database administrator. *(emphasis added)* Instead it appears that the duties of the proffered position include some of the duties of Computer Support Specialists, Database Administrators and Network and Computer Systems Administrators. Further the proffered position does not appear to be parallel to any position that requires a minimum of a baccalaureate degree in a specific specialty for entry into the position.  It appears that the proffered position requires a wide range of skills; however, the skills required, appear to be general skills that can be obtained through some formal education or past work experience. There appears to be no requirement that the education conform to a specific specialty.  Indeed it appears that any number of educational pursuits, and/or work experiences would suffice, provided that supporting coursework include various courses specific to the proffered position."

32. USCIS then rejected all of the evidence that it had requested noting that none of it proved that it was a specialty occupation.

## ARGUMENT

33. The USCIS decision is completely arbitrary, capricious, and irrational. Its own description of the proffered job is that Beneficiary would be responsible for installing and programming a large company's management information systems for various business transactions.  "Programming and installing" clearly is not the same as "maintaining the Petitioner's existing systems."

34. Moreover, "maintaining existing systems" is not the main duty listed in the Petitioner's job description. In the more detailed job description submitted by Petitioner in response to the RFE, it specifically states that Beneficiary will spend %20 percent of her time maintaining the systems that she is designing, installing, and programming.

35. Moreover, the OOH job description for Database Administrator

is almost an exact match to Beneficiary's proposed job description. It is unclear, and USCIS does not even attempt to clarify, which of Beneficiary's proposed job duties are not those of a Database Administrator. Indeed all of her duties appear in both the OOH job description for Database Administrators as well as the job duties listed in the SOC occupation description.

36. It is also undisputed that Database Administrator is a specialty occupation that requires, at minimum, a bachelor's degree in Management Information Systems or Computer Information systems in order to enter the profession.

37. The denial issued by USCIS was wholly capricious, arbitrary, and irrational. It is completely unsupported by the evidence. On the contrary, the evidence in the record directly contradicts the findings made by USCIS.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

38. USCIS' decision denying Plaintiff Wei-Chuan's H-1B petition is a final agency action under 5 U.S.C.§ 704 and ripe for judicial review. 8 C.F.R. §214.2(h)(12)(permissive appeal of denial of petition). No further exhaustion of administrative remedies is mandated by statute or regulation, and no further permissive administrative appeal may be required for actions brought under the Administrative Procedures Act ("APA"). *Darby v. Cisneros,* 509 U.S. 137, 154(1993).

39. Additionally, as a prudent matter, further intra-agency appeal would result in manifest injustice and prejudice to Plaintiff.

Appeals to the Administrative Appeals Office ("AAO") typically take at least a year, if not two years, before a decision is returned. During that time, Plaintiff would be deprived of the opportunity to employ Beneficiary and Beneficiary would need to wait abroad for the resolution of this matter.

## FIRST CLAIM FOR RELIEF
### (Violation under Administrative Procedures Act)

40. The allegations set forth above in paragraphs 1 through 18 inclusive are incorporated into this cause of action by reference as if set forth in full.

41. Defendant's decision to deny Plaintiff's petition is not supported by the record and is therefore arbitrary and capricious under the APA.  The United States Supreme Court has held that an agency must engage in "reasoned decision-making." *Judulang v. Holder*, 132 S.Ct. 476(2011). A court can review whether the decision was based on "a consideration of the relevant factors" and whether "there has been a clear error of judgment." Id. at 484.  That review requires looking at the quality of the agency's reasoning (or lack thereof).

WHEREFORE, Plaintiffs request the Honorable Court to invalidate Defendant's decision to deny Plaintiff Wei-Chuan's petition to classify Beneficiary as an H-1B Temporary Specialty Occupation Worker on the ground that the position does not qualify as a Specialty Occupation as defined in INA §214(h)(1).

## SECOND CLAIM FOR RELIEF
### (Injunctive Relief)

42. The allegations set forth above in paragraphs 1 through 20 inclusive are incorporated into this cause of action by reference as if set forth in full.

43. This is an action for injunctive relief against Defendant.

44. A bona fide dispute has arisen between Plaintiffs and the Defendant regarding the factual and legal sufficiency of the Defendant's decision to denying Plaintiff Wei-Chuan's I-129 petition and Plaintiff Lin's change of status and extension of stay and Plaintiffs have been prejudiced by the Defendant's decision.

WHEREFORE, Plaintiffs request that judgment be entered in favor of Plaintiffs and against Defendant, and that Defendant and any of Defendant's agents or other person for, with, by, through or under any of them:

(a) Be compelled to vacate Defendant's decision that denied Plaintiff Wei-Chuan's petition and Plaintiff Lin's change of status and extension of stay;

(b) be compelled to hold any and all such hearings to determine the sufficiency of the reasons relied upon by Defendant in finding that Plaintiff's petition was not approvable pursuant to 8 C.F.R. 214.2(h).

(c) That the Court awards all other such relief to Plaintiff as this Court deems just, proper and equitable.

## THIRD CLAIM FOR RELIEF
### (Declaratory Relief)

45. The allegations set forth above in paragraphs 1 through 23 inclusive are incorporated into this cause of action by reference as if set forth in full.

46. This is an action for declaratory relief pursuant to 28 USC §2201.

47. A bona fide dispute has arisen between Plaintiff and Defendant regarding the factual and legal sufficiency of the Defendant's decision to deny Plaintiff Wei-Chuan's petition, and Plaintiffs have been prejudiced by the Defendant's decision.

WHEREFORE, Plaintiffs request that judgment be entered in favor of Plaintiffs and against Defendant and the Court enter a judgment:

(a) declaring that the Defendant's decision to deny Plaintiff Wei-Chuan's petition was without basis in fact and law and contrary to and inconsistent with applicable statutes, regulations and operating instructions, as well as contrary to and inconsistent with the due process clause of the Fifth Amendment to the United States Constitution;

(b) declaring that the Defendant's decision was contrary to the law and was arbitrary and capricious;

(c) declaring that Defendant and any of Defendant's agents or other persons acting for, with, by, through or under any

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 15

of them, may not take any steps to enforce the effect of this illegal decision;

(d) and that the Court award all other such relief to Plaintiffs as this Court deems just, proper and equitable.

## FOURTH CLAIM FOR RELIEF
### (Attorneys' Fees and Cost Pursuant to 28 USC §2412)

48. The allegations set forth above in paragraphs 1 through 26 inclusive are incorporated into this cause of action by reference as if set forth in full.

49. This is an action for attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 USC §2412.

50. If Plaintiff Wei-Chuan prevails in this action, it will be eligible to receive an award under the EAJA, 28 USC §2412(d)(1)(B),(2)(H).

51. The position of the Government was and is not substantially justified under the EAJA, USC §2412(d)(1)(B).

WHEREFORE, Plaintiffs request that judgment be entered in its favor and against Defendant and that the Court enter a judgment awarding Plaintiff Wei-Chuan reasonable attorneys' fees and costs pursuant to the EAJA, and the Court award all other such relief to Plaintiffs as this Court deems just, proper and equitable.

///

Dated this 10th day of October, 2013,

                                   Respectfully Submitted,
                                   SCHEIN & CAI, LLP

                                   *[signature]*
                                   Love M. Macione
                                   Attorney for Petitioner